

# MANDEL BHANDARI LLP

11 Broadway │ Suite 615 │ New York, NY │ 10004 │ T. (212) 269-5600 │ F. (646) 964-6667 │ www.mandelbhandari.com

August 12, 2014

**BY ECF**

Hon. John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   <u>Scantibodies Laboratory, Inc., v. Church & Dwight Co., Inc.,
               Case No.: 1:14-cv-02275 (JGK)</u>

Dear Judge Koeltl:

      We represent Plaintiff Scantibodies Laboratories Inc. ("SLI") in the above-captioned action against Defendant Church & Dwight ("C&D"). We write to request an informal discovery conference pursuant to Fed. R. Civ. P. 26 and Local Rule 37.2. Specifically, we request that the Court order Defendants to produce several categories of relevant documents and information. Over the course of many weeks, the parties have met and conferred repeatedly on the disputes described below, but have been unable to reach agreement.[1]

## I.    Documents Related to C&D's Replacement of SLI

      As set forth in SLI's Complaint, this action concerns a pair of requirements contract entered into between the parties in 2009 and 2010 (the "2009 Agreement", the "2010 Agreement" and collectively the "Agreements" or the "Supply Agreements"). Compl. ¶¶ 2, 12 (Dkt. 12).

      Pursuant to the Agreements, SLI agreed to supply C&D with pregnancy and ovulation test kits sold under the "First Response" and "Answer" brand names. *Id.* ¶ 1-2, 10-16. The Agreements created an exclusive dealing arrangement under which SLI was prohibited from supplying test kits to C&D's competitors without prior approval and under which C&D could only replace SLI with another supplier under certain limited conditions explicitly described within the Agreements. *Id.* ¶¶ 2-3, 11-12, 23.

      By its terms, the Supply Agreements ran until at least June 2015. *Id.* ¶ 17. Nevertheless, on October 25, 2013, C&D told SLI that it was unilaterally reducing its orders to zero in the hopes

---

[1]  Over the course of six weeks, we have significantly narrowed the scope of discovery issues. There are still several issues that the parties are negotiating including (i) the format in which electronic documents will be produced; and (ii) the final production date. The topics addressed in this letter require the Court's guidance because the parties have reached an impasse on the issues.

of getting a better price from another supplier. *Id.* ¶¶ 39-40. Accordingly, SLI has brought suit against C&D for breach of contract and declaratory relief. *Id.* ¶¶ 81-100.

In its First Set of Document Requests, SLI sought several categories of documents related to SLI's decision to reduce its orders from C&D and/or to change suppliers. In particular, SLI seeks:

4. All Documents concerning C&D entering into agreements for the supply or manufacture of Test Kits with entities other than SLI.[2]

17. All Documents concerning any discussion or analysis by C&D of the economics of using a supplier and/or manufacturer other than SLI for Test Kits, including but not limited to C&D itself and/or Syntron Bioresearch Inc. and/or Rand.

18. All communications that refer to or concern SLI, between C&D and the suppliers and manufacturers who are currently supplying and/or manufacturing Test Kits.

19. All Documents concerning any determination by C&D that SLI should cease manufacturing Test Kits under the Supply Agreements.

20. All Documents concerning any determination by C&D to reduce to zero the quantity of products that C&D orders from SLI.

28. All contracts, draft contracts, term sheets, memorandums of understanding, letters of intent or similar documents between C&D and any entity other than SLI for the supply and/or manufacture of Test Kits.

33. Documents sufficient to ascertain C&D's profits or losses related to Test Kits supplied by SLI.

34. Documents sufficient to ascertain C&D's projected profits or losses related to Test Kits supplied by SLI.

35. Documents sufficient to ascertain C&D's projected profits or losses related to Test Kits supplied by entities other than SLI.

36. Documents sufficient to ascertain C&D's profits or losses related to Test Kits supplied by entities other than SLI.

Defendant has refused to produce any documents responsive to these requests on relevance grounds. C&D argues that (i) the details of its new supplier relationships and (ii) the economics of

---

[2] Plaintiff agreed to narrow Request No. 4 to: (i) documents sufficient to determine pricing from other vendors; and (ii) draft and final supply agreements with other vendors.

the new supplier relationship compared to the SLI relationship are irrelevant to the question of whether C&D breached the Supply Agreements. C&D is incorrect.

The Supply Agreements created an exclusive dealing relationship between SLI and C&D and did not permit C&D to enter into supply agreements with other vendors. Compl. ¶ 23. Because the quantity term of an output contract varies, the test to determine breach centers on the parties' good faith in producing or accepting amounts of the product in question. See N.Y. U.C.C. § 2-306 ("A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.").

Thus, C&D could have reduced its requirements to zero, "if it had a legitimate business reason for eliminating its requirements, as opposed to a desire to avoid its contract." NCC Sunday Inserts v. World Color Press, 759 F. Supp. 1004, 1009 (1991). Legitimate business reasons include market fluctuations or a desire to exit a market altogether. But the urge to get a better price from a new supplier is not a legitimate, good faith business reason to eliminate a buyer's requirements under a particular contract. That is simply a "desire to avoid its contract."

Moreover, pursuant to N.Y. U.C.C. § 2-306(2), C&D was required to undertake best efforts to promote the sale of the products supplied by SLI. Evidence that C&D intentionally reduced its sales of products supplied by SLI is plainly relevant to SLI's breach of contract claims.

As such, the Court should order SLI to produce documents responsive to these requests because they are relevant to C&D's good faith and the best efforts requirements.

**II.     Documents Related to False Statements or Deception by C&D**

Pursuant to the Agreements, C&D was obligated to provide SLI with intermittent "rolling forecasts," and monthly Production Plans that would estimate the number of test kits that C&D would order from SLI in the months ahead. Compl. ¶ 47. These projections were designed to permit SLI to purchase raw materials, maintain and upgrade manufacturing equipment, and regulate its production in a manner that permitted it to satisfy C&D's needs. Id. ¶¶ 47-49.

However, in 2013, C&D intentionally provided false information to SLI concerning its future purchases of product. Id. ¶¶ 4, 50-67. At the same time that it was actively seeking to replace SLI and reducing its inventory of SLI test kits – a plan that it referred to internally as "Project Pink" – it continued to tell SLI that it intended to purchase large numbers of test kits through 2014. Id. ¶¶ 45-46, 50-67. Because of this, SLI invested in raw materials and equipment upgrades for which it ultimately had no practical use. Id. ¶¶ 49, 68, 70. In its Complaint, SLI seeks damages for, *inter alia*, these losses. Id. ¶¶ 68-80. To establish these claims, SLI has requested the following categories of documents:

    21.     All Documents concerning when or how to inform SLI that (i) SLI should cease

       manufacturing Test Kits under the Supply Agreements, or (ii) that C&D would reduce to zero the quantity of products that C&D orders from SLI, including but not limited to any Communications concerning providing SLI with any Forecasts and Orders for zero Test Kits, or Communications concerning the notice provisions of the Supply Agreements.

22.     All Documents concerning the need to keep any information secret from SLI, including but not limited to the need to keep Project Pink secret from SLI, and/or the need to keep secret from SLI C&D's intention to reduce to zero the quantity of products that C&D orders from SLI.

23.     All Documents concerning the need to mislead SLI about any matter.

24.     All Documents concerning any shift by C&D from maintaining a 6-to-10 week supply of finished inventory to a 4-to-six week supply of finished inventory.

25.     All Documents concerning any shift in C&D's inventory policies as it related to Forecasts and Orders.

Again, citing relevance grounds, C&D has refused to produce any of these documents. But these documents are relevant for at least two reasons: (1) documents related to Project Pink, C&D's deception, and/or reasons for why C&D changed its inventory policies are relevant to SLI's allegation that C&D violated its obligation to vary the quantity it ordered only for good faith reasons; and (2) a shift in the amount of inventory that C&D ordered is relevant to SLI's damages.

Accordingly, these documents must be produced.

**III.**     **Documents Related to SLI's Affirmative Defenses and Factual Contentions**

In communications between the parties, C&D has insisted that its decision to cease purchasing product from SLI does not violate the Agreements. It has also interposed numerous affirmative defenses to this action in its answer. Answer (Dkt. 31). Accordingly, Plaintiff has made ordinary and straightforward discovery requests seeking to uncover the bases (if any) for these contentions:

32.     All Documents supporting C&D's contention that it has not breached the Supply Agreements.

37.     All Documents related to SLI's Second Affirmative Defense that "Plaintiff's claims are barred by the doctrines of laches, waiver, unclean hands, and other applicable equitable doctrines."

38.     All Documents related to SLI's Third Affirmative Defense that "Plaintiff's claims are barred by the doctrine of accord and satisfaction."

39.     All Documents related to SLI's Fifth Affirmative Defense that "The damages Plaintiff seeks are barred, in whole or part, because to the extent Plaintiff has suffered any damages, such damages were not caused by Defendant but are due solely to the fault, negligence or other conduct of Plaintiff."

40.     All Documents related to SLI's Seventh Affirmative Defense that "Some or all of the damages Plaintiff seeks are barred by the terms of the Supply Agreements, including, but not limited to, Section 11.2 of the Supply Agreements."

41.     All Documents related to SLI's Eighth Affirmative Defense that "The damages Plaintiff seeks are barred by virtue of its failure to mitigate any alleged damages."

42.     All Documents related to SLI's Ninth Affirmative Defense that "Plaintiff's claims are barred because Defendant had the right to, and did exercise its right to, terminate the Supply Agreements immediately and without notice due to a material change in the management of SLI."

43.     All Documents related to SLI's Tenth Affirmative Defense that "Plaintiff's claims are barred because Defendant had the right to, and did exercise its right to, terminate the Supply Agreements immediately and without notice due to SLI's commission of three or more defaults and/or breaches of the warranties it made in the Supply Agreements during a twelve month period."

C&D has refused to produce any documents relating to its affirmative defenses or its claim that it did not violate the contract, asserting that any such documents would constitute "work-product." Although SLI is only seeking non-privileged documents, Defendant has still refused to produce any documents responsive to these requests.

Defendant's refusal is bizarre and patently improper. Even absent an explicit discovery request, Fed. R. Civ. P. 26(a)(1)(ii) requires the parties to produce "a copy… of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."

Moreover, courts in this circuit regularly order parties to produce documents that relate to defenses raised in pleadings. *See*, *e.g.*, *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 109 (S.D.N.Y. 2013) ("even absent a discovery request, any party must produce documents that 'it may use to support its claims or defenses' … [t]hat obligation is ongoing, and 'a party must supplement its initial disclosures when additional information supporting its claims or defenses comes to its attention.'") (internal citations omitted); *Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, Case No. 08 Civ. 3604 (BSJ) (JCF), 2009 U.S. Dist. LEXIS 106424, 4-6 (S.D.N.Y. Nov. 16, 2009) (rejecting "work product" objection for requests seeking "any documents related to each affirmative defense" on grounds that defendant "plainly has the obligation to produce the documents requested"); *Charter Practices Int'l, LLC v. Robb*, Case No. 3:12-cv-1768(RNC), 2014 U.S. Dist. LEXIS 8166 (D. Conn. Jan. 23, 2014) (ordering production of "documents supporting the defendant's affirmative defenses and counterclaims").

Judge Koeltl
August 12, 2014
Page 6

Accordingly, the Court should order the production of documents responsive to these requests.

## IV.   Interrogatories to Which C&D has Refused to Respond

In addition to the document requests described above, C&D has refused to answer three interrogatories propounded by SLI, seeking the identification of relevant witnesses and clarification of statements made in its Answer with Counterclaims:

1. Describe the circumstances of C&D's alleged termination(s) of the Supply Agreements including the date(s) of the termination(s), how the termination(s) were conveyed to SLI, the basis (if any) for the termination(s), and who, at C&D, conveyed the termination(s) to SLI.

2. Identify all persons at C&D who were involved in the decision to terminate either or both of the Supply Agreements.

3. Identify all of SLI's defaults and/or breaches of the warranties contained in the Supply Agreements including a description of the alleged default and/or breach and the date when such default and/or breach occurred.

Defendant has objected to request number 2 as calling for "work product."  And Defendant has taken the position that requests 1 and 3 are barred by Local Rule 33.3.

*First*, the work product doctrine does not permit Defendants to refuse to identify individuals who participated in – and thereby have knowledge concerning – the decision to terminate the Agreements.  As a general matter, Fed. R. Civ. P. 26(a)(1)(A)(i) and Local Rule 33.3 explicitly authorize disclosure of the identities of witnesses with knowledge relevant to an action.

As such, courts in this circuit have repeatedly rejected efforts to conceal the identities of witnesses using claims of "work product."  *See, e.g.*, *Norflet v. John Hancock Fin. Servs.*, Case No. 3:04-cv-1099 (JBA), 2007 U.S. Dist. LEXIS 8410, at *9 (D. Conn. Feb. 5, 2007) ("Numerous other courts have consistently held that the names and addresses of individuals interviewed by counsel 'who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine.'").

Courts have ordered disclosures of the identities of potential witnesses even when those witnesses faced potential retaliation should their identities be known.  *In re Marsh & McLennan Cos.*, Case No. 04 Cv. 8144 (SWK), 2008 U.S. Dist. LEXIS 57542 (S.D.N.Y. July 30, 2008) (ordering disclosure of the identities of "confidential witnesses" relied upon in drafting complaint).  Moreover, Defendant has been unable to articulate any basis under which producing a list of C&D employees involved in the decision to terminate the Agreements would raise "a real, rather than speculative, concern that counsel's thought processes 'in relation to pending or anticipated

litigation' will be exposed through disclosure'"). *Mercator Corp. v. United States*, 318 F.3d 379, 386 (2d Cir. 2002).

     ***Second***, the information sought by interrogatories 1 and 3 present "a more practical method of obtaining the information sought than a request for production or a deposition."  In its Answer, Defendant claims that it had a basis for terminating the Agreements and therefore should not be liable for breach.[3]  As such, Plaintiff has the right to know when C&D believes the contracts were terminated and which actions C&D believes were breaches of the agreement.  Neither document requests nor depositions are likely to reveal this information in a coherent way.  Witnesses are unlikely to remember the exact dates, times, and reasons for C&D's termination of the Supply Agreements.  And document requests will not enable SLI to identify the dates of the alleged breaches and the alleged termination.  As such, the Court should order C&D to answer the three challenged interrogatories.

     \*     \*     \*

     For the reasons stated above, Plaintiff respectfully requests that the Court order Defendants to (i) produce the document responsive to Plaintiff's Document Requests Nos. 4, 17, 18, 19, 30, 21, 22, 23, 24, 25, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43; and (ii) answer Plaintiff's Interrogatories Nos. 1-3.

                    Respectfully Submitted,

                    Rishi Bhandari

Cc:     Counsel for Defendant
          (via ECF)

---

[3] *See* Counterclaim ¶¶ 15, 16 ("15. On information and belief, SLI has committed at least three defaults and/or breaches of the warranties of the Supply Agreements within a twelve month period. 16. Each of these events constitutes grounds pursuant to which Church & Dwight was entitled to terminate the Supply Agreements immediately and without notice, and without any further obligation to SLI, other than with respect to scrapping costs as may properly be proven, if any.").