

11 Broadway | Suite 615 | New York, NY | 10004 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

December 15, 2014

**BY ECF**

Hon. Debra C. Freeman
Magistrate Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007
F: (212) 805-4258
T: (212) 805-4250

      Re:    <u>**Scantibodies Laboratory, Inc., v. Church & Dwight Co., Inc.,**</u>
              <u>**Case No.: 1:14-cv-02275 (JGK)**</u>

Dear Judge Freeman:

      I represent Scantibodies Laboratories Inc. ("SLI") and I write in response to Church & Dwight ("C&D")'s letter dated December 11, 2015.

      Once again, Church & Dwight ("C&D") has refused to meet and confer about the issues detailed in a letter sent to the Court. As C&D admits, on December 11, SLI offered to provide C&D with a revised Rule 26 computation by December 19, 2014. C&D never even attempted to raise any of the other issues detailed in its letter with SLI. Instead, at 10:01 pm on December 11, Jordan Leader emailed me that "[C&D] cannot agree to the proposal you made this afternoon with respect to SLI's damages computation." Then, at 10:14 pm, C&D filed its five page letter with the Court.

      To say that C&D was itching to write to the Court is an understatement. Once again, C&D explicitly ignored the Court's instruction to meet and confer before involving the Court in a discovery dispute. But why C&D was itching to the write to the Court is a mystery because C&D's discovery positions are frivolous.

      *First*, SLI has fully complied with Rule 26. Attached is a Supplemental Rule 26(a) Disclosure, which reiterates information that has already been conveyed to C&D several times. As the Court stated on November 21, 2014, "a damages calculation under Rule26(a)(1) requires what it requires and if you look at the rule it has to provide a computation of every category of damages and provide the documents or other evidence on which the computation is based."

      SLI has done exactly that. In accordance with Rule 26, SLI has "ma[d]e available for inspection and copying" all of "the documents or other evidentiary material…on which each

computation is based." Rule 26 does not require that SLI identify the documents by Bates Stamp number. Indeed, the single case that C&D cites in support of its request for Bates Stamp identification comes from the Eastern District of Michigan, concerns a case where a plaintiff (i) sought over $2 billion in lost profits; (ii) Defendant served Plaintiff with an interrogatory asking Plaintiff to describe in detail how it calculated its damages; and (iii) Plaintiff refused to provide any explanation of how the $2 billion damages computation was performed. See Aetna Inc. v. Blue Cross Blue Shield of Mich., 2012 U.S. Dist. LEXIS 136171, 3-4 (E.D. Mich. Sept. 24, 2012).

      In other words, Aetna is a non-binding decision rendered by a Michigan court in response to a totally different set of facts. Aetna did not permanently alter parties obligations under Rule 26.

      That being said, on several occasions, SLI has offered to provide C&D with Bates Stamp numbers of the documents supporting SLI's damages calculation if C&D would identify all documents by Bates Stamp number that it has produced that are responsive to each of C&D's defenses pursuant to Rule 26(a)(1)(A)(ii). C&D has refused this reasonable compromise but seeks to have the Court unilaterally expand SLI's discovery obligations.[1] **Accordingly, SLI requests that both sides be ordered to identify documents by Bates Stamp number as supplementary Rule 26(a)(1)(A)(ii) and Rule 26(a)(1)(A)(iii) disclosures, on or before December 19, 2014.**

      *Second*, C&D seeks the immediate production of all of SLI's "other agreements with other customers." As an initial matter, this document request was served on December 3, 2014, so SLI's objections and responses are not due until January 2, 2014. That being said, this request is irrelevant and seems calculated to harass SLI. SLI's other contracts are not relevant to the C&D Supply Agreements. Indeed, Samuel Dragotta, C&D's Director of Global Procurement (and former Director of Global Manufacturing Services), testified that he believed that the Supply Agreements were just modified versions of C&D's "boilerplate" contracts. See Samuel Dragotta Deposition Transcript, December 21, 2014 ("Dragotta Tr."), p. 289:

> Q: So how can you know that every single contract contains this term?
> A. We have boilerplate contracts.
> Q. So Church & Dwight wrote this – is this Church & Dwight's boilerplate contract?
> [Jordan Leader]: Object to the form.
> A. It's modified in certain areas.

---

[1] As a separate matter, C&D claims that it "complied with [the] order" that it identify by Bates number all of the documents related to C&D's termination of the Supply Agreements. C&D has identified a handful of documents that are supposedly responsive to that order, but C&D has not identified a single document that gives SLI notice that the Supply Agreements were terminated.

*Third*, C&D has requested the "the personnel files and documents regarding all former SLI employees involved with the supply of test kits to Church & Dwight, including . . . Allen Garrett, Maribeth Moore, Michael Nordstrom, Todd Casciani, Daniel Rivera, etc." C&D claims that these documents are relevant because "Church & Dwight has asserted that it had the right to terminate the supply agreements, and did terminate the supply agreements, because of a material change in SLI's management." That is simply untrue.

For starters, management of SLI has not changed since 2009. As reflected in SLI's organizational charts, Tom Cantor and John Van Duzer are and, since well before 2009, were SLI's sole management employees. Consequently, these personnel files are irrelevant.

Moreover, C&D never actually terminated the Supply Agreements because of a "material change in management." See Dragotta Tr., p. 224:

> Q. Did Church & Dwight provide a written notice
> that the supply agreement – the supply agreements
> were being terminated because of any material
> change in ownership, control or management of
> SLI?
> A. No.

*Fourth*, C&D received SLI's redacted privilege log on December 3. Since then, C&D has not met and conferred with SLI about any privilege log entries that it thinks are not privileged. **SLI believes that it has produced all non-privileged documents but if C&D provides SLI with an explanation of what additional documents are supposedly not privileged, SLI will review those documents.**

As a separate matter, SLI believes that C&D has not produced all responsive documents and continues to improperly shield business documents as privileged. **To that end, SLI will meet and confer with C&D on or before December 19 and, if no progress is made, request that the Court conduct an in camera review of a sample of C&D's supposedly privileged documents.**

*Fifth*, SLI's depositions of Menasha and Syntron are necessary because they are reasonably calculated to lead to the discovery of admissible evidence related to (among other things): (i) the size of the current pregnancy test kit market; (ii) when C&D first started ordering pregnancy test kits from other companies; (iii) SLI's quality compared to other vendors; and (iv) the accuracy and completeness of documents produced by C&D related to forecasts, orders, and signed contracts.

Respectfully,
MANDEL BHANDARI LLP

Rishi Bhandari