

11 Broadway | Suite 615 | New York, NY | 10004 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

December 19, 2014

**BY FEDERAL EXPRESS AND ECF**

The Honorable Debra C. Freeman
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

  **Re:** **Scantibodies Laboratory, Inc., v. Church & Dwight Co., Inc.,
    Case No.: 1:14-cv-02275 (JGK)**

Dear Judge Freeman:

  I represent Scantibodies Laboratories Inc. ("SLI") and I write in response to Church & Dwight's ("C&D") letter dated December 17, 2015 (Dkt. 88).

**I. Rule 26 Initial Disclosures**

  In its letter, Defendant accuses SLI of "willful refusal to comply with This Court's order" and claims that Plaintiff's Amended Damages Computation "makes a mockery of the Court's Order, Rule 26(a)(1)(A)(iii) and the agreement of the parties" and represents an act of "complete defiance." Both Defendant's hyperbolic language and its personal attacks on Plaintiff's motives and character are entirely inappropriate.

  Plaintiff has already produced a revised computation of damages. With respect to SLI's claim for lost profits, the computation sets forth (i) the reference year that SLI used in its computation; (ii) an explanation of why that year was selected; (iii) the total revenue earned from sales to Church & Dwight in that calendar year; and (iv) SLI's total cost of goods sold for that year. Moreover, Plaintiff has previously provided Defendant with financial documentation showing for each year between 2009 and 2013: (a) SLI's annual sales revenue derived from test kit sales to Church & Dwight; (b) the number of sticks SLI shipped on an annual basis; (c) SLI's direct manufacturing costs broken out by category, including materials, shipping, striping, quality control, and manufacturing support; (d) SLI total overhead costs allocated to the Church & Dwight business; and (e) SLI's PTK Net Gross profit.

  In addition, Defendant has already scheduled the depositions of SLI's CEO, COO, and a former employee of SLI who was the Director of Finance. The notion that Plaintiff has not been forthcoming about the basis for its calculation of damages or that Defendant lacks the means to effectively scrutinize the amount of Plaintiff's lost profits is simply not supportable. Defendant's request that Plaintiff be sanctioned for failing to identify by bates number every document relevant to damages is equally inappropriate. By its language, Fed. R. Civ. P. Rule 26(a)(1)(A)(iii) imposes

Judge Freeman
December 19, 2014
Page 2

no such requirement and Defendants have identified no relevant authority that required Plaintiff to do so.

Indeed, Plaintiff's damages disclosures stand in marked contrast to Defendant's gamesmanship concerning the alleged termination of the Supply Agreements. The Court previously ordered Defendants to identify "documents that show a date of termination, how the termination was conveyed, meaning the termination itself", including "[t]he basic documents if there are any that convey this contract is hereby terminated" and "[n]ot all of the underlying reasons it could have gone into that determination". (11/21 Tr. 73:8-18). In spite of this clear request, Defendant has identified fifteen different documents, dating from as early as March of 2012 to as late as December 2013. *See* Exhibits A-C.[1] One of the documents identified by C&D is not even a communication between C&D and SLI, but rather is an internal report prepared by C&D in 2012 and designated "Attorneys' Eyes Only." *See* Exhibit D.

While accusing Plaintiff of making efforts to "hide the ball," Defendant has refused to take a position on the most basic factual elements of its proffered defense: (i) whether it terminated the Supply Agreements; and (ii) when it did so. Accordingly, Plaintiff respectfully requests that the Court order C&D to identify the date on which it claims to have terminated the Supply Agreements and the communication (whether oral or written) in which it did so.[2]

## II.   Contracts with Others

Defendant's December 17, 2014 letter repeats its demand that SLI turn over every supply agreement that it has entered into with any other company. This request is inappropriate and harassing for the reasons set forth in my December 15, 2014 letter (Dkt. 87). However, to the extent that the Court accepts Defendant's argument that discovery should be taken on "the parties' practices with respect to other supply agreements – i.e., how they treated other contract manufacturing relationships," Plaintiff respectfully requests that Defendant also be directed to produce any supply agreement that C&D has entered into with any other company.

To be clear, this is not a "tit for tat" request. Plaintiff believes that its contracts that are unrelated to the manufacture of pregnancy test kits are irrelevant. But if the Court accepts C&D's contention that all contracts between SLI and other customers are relevant to understand SLI's subjective intent when it entered into the Supply Agreements, then all of C&D's contracts between C&D and its customers are also relevant to understand C&D's subjective intent. This is particularly true because Samuel Dragotta, C&D's former Director of Global Manufacturing

---

[1]   To ensure the confidentiality of all material subject to the Protective Order, Plaintiff will submit all Exhibits to this letter in hard copy form and file only the letter itself on ECF. Exhibits F&G, containing hundreds of pages, will be submitted on disc.

[2]   In a further attempt to obtain a straight answer concerning when Defendant claims to have terminated the Supply Agreements, Plaintiff also served RFA's seeking this information. While Defendant responded to some of the RFAs, it refused to admit or deny whether the agreements had terminated in October, November, or December of 2013. *See* Exhibit E at ¶¶ 13-15.

Services testified that the Supply Agreements between SLI and C&D were just modifications of C&D's boilerplate agreements. As such, C&D's other contracts may be relevant to C&D's subjective intent even if SLI's other contracts are irrelevant.

### III. Employee Personnel Files

Mr. Dragotta was C&D's 30(b)(6) designee for the following topic: "C&D's affirmative defenses. Including but not limited to (i) the 'material change in the management of SLI' referred to in C&D's Ninth Affirmative Defense." Defendants do not dispute that Mr. Dragotta testified under oath that C&D did not terminate the Supply Agreements because of a change in management.

But even if that defense were still viable, the confidential and highly sensitive personnel records of the third parties identified by C&D have absolutely no bearing on this action. Plaintiff stipulates that these individuals no longer work at SLI. Their performance as SLI employees, their reasons for leaving the company, and the sensitive contents of their personnel records have no relevance to this action.

### IV. Privilege Logs

While making broad accusations concerning SLI's privilege compliance, C&D has not identified a single entry on SLI's privilege log that it believes to be improper. Some perspective is in order. Plaintiff's current privilege logs (including both redacted documents and withheld documents) contain only 179 entries. In contrast, Defendant's privilege logs run over ***200 pages*** and contain in excess of 1000 entries. *See* Exhibits F-G . Despite producing approximately half as many documents in discovery as SLI, Church & Dwight has withheld many times more material on privilege grounds.

Moreover, many of the entries on Defendant's logs appear to be entirely improper. Defendant has redacted at least[3] 152 documents that do not make reference to any attorney and for which Defendant cannot identify the attorney that provided the allegedly privileged information. A list of the improper entries is attached as Appendix A. Many of these entries are highly suspicious. For example, entries nos 562 and 569 redact email correspondence between Ed Coates, a non-lawyer, and Johanne O'Reilly, a non-lawyer, concerning C&D's plans to replace SLI. In one comment, Coates informs O'Reilly that "Yes we do have a contract until June of 2015" after which the remainder of his comment is entirely redacted. *See* Exhibit J. In another email, Coates is called upon to explain C&D's strategy for dealing with any negative reaction once SLI is informed of its replacement and his entire response is redacted. *See* Exhibit K. Similarly, entry 534 is a

---

[3] Even this may be an understatement. Defendant has also failed to log all of its privilege redactions. *See* Exhibit H, a document that does not appear on Defendant's privilege log. This document is an internal presentation concerning C&D's plans to replace SLI. While the document confirms that C&D knew that it needed to give SLI notice under the Meet or Release provision of the contract if it sought to move to another supplier (*id.* at CD00177626) portions of the final page are redacted. Another presentation containing even more redactions (which also does not appear on C&D's privilege log) is attached as Exhibit I.

communication between two non-lawyers in which information on the current status of "Project Pink" – C&D's codename for the plan to replace SLI – is redacted. See Ex. L.

      In light of these issues, Plaintiff respectfully requests that the Court order Defendants to identify the attorney or attorneys that provided the legal advice that forms the basis for each of their assertions of privilege. In addition, Plaintiff requests that the Court review, *in camera*, a selection of documents chosen by Plaintiff from Defendant's privilege logs to verify that the claims of privilege are supportable.

      Respectfully submitted,

      MANDEL BHANDARI LLP

      Rishi Bhandari

cc:    Counsel for Defendants
      (via ECF and email)

## Appendix A
Redaction Log Entries for Which No Attorney is Identified

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 80 | 179 | 336 | 393 | 522 | 560 | 632 |
| 2 | 81 | 180 | 337 | 394 | 523 | 561 | 633 |
| 3 | 133 | 181 | 349 | 395 | 524 | 562 | 634 |
| 4 | 138 | 186 | 350 | 396 | 525 | 569 | 635 |
| 5 | 139 | 187 | 351 | 400 | 531 | 570 | 636 |
| 6 | 140 | 192 | 357 | 401 | 532 | 571 | 638 |
| 7 | 141 | 193 | 368 | 404 | 534 | 572 | 640 |
| 8 | 142 | 194 | 371 | 406 | 535 | 573 | 641 |
| 9 | 143 | 195 | 372 | 407 | 540 | 574 | 642 |
| 30 | 157 | 196 | 373 | 414 | 541 | 575 | 652 |
| 31 | 160 | 197 | 374 | 415 | 542 | 576 | 653 |
| 32 | 164 | 220 | 380 | 419 | 543 | 577 | 654 |
| 33 | 165 | 223 | 386 | 420 | 544 | 578 | 655 |
| 34 | 166 | 226 | 387 | 421 | 545 | 582 | 656 |
| 61 | 174 | 304 | 388 | 429 | 546 | 585 | 657 |
| 62 | 175 | 305 | 389 | 433 | 547 | 604 | 658 |
| 77 | 176 | 310 | 390 | 479 | 548 | 605 | 659 |
| 78 | 177 | 334 | 391 | 497 | 554 | 606 | 660 |
| 79 | 178 | 335 | 392 | 499 | 559 | 619 | 663 |